**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| NADIA YOUKELSONE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50039 (MFW) |
| | ) | |
| WASHINGTON MUTUAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Defendant's Motion to Dismiss the
Amended Complaint filed by Nadia Youkelsone ("Youkelsone"). For
the reasons set forth below, the Court will grant the Motion.


I.  BACKGROUND

The Defendant, Washington Mutual, Inc. ("WMI"), a Washington
corporation, was a savings and loan holding company whose primary
asset was Washington Mutual Bank ("WMB"). On September 25, 2008,
the Office of Thrift Supervision seized WMB and appointed the
Federal Deposit Insurance Corporation ("FDIC") as receiver.

---

[1] The Court is not required to state findings of fact or
conclusions of law when ruling on a motion under Rule 12. Fed.
R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no
findings of fact or conclusions of law but accepts the facts as
averred in the Amended Complaint.

Immediately following its appointment as receiver, the FDIC sold substantially all the assets and liabilities of WMB to JPMorgan Chase Bank, National Association ("JPM").  On September 26, 2008, WMI filed a petition for relief under chapter 11 of the Bankruptcy Code.

On January 21, 2009, Youkelsone, proceeding pro se,[2] filed a complaint against WMI.  On February 20, 2009, WMI filed a motion to dismiss the complaint.  On October 8, 2009, the Court issued an Order granting WMI's Motion to Dismiss.  Youkelsone then filed an amended complaint on November 6, 2009 (the "Amended Complaint").  The Amended Complaint alleges the following:

- WMI, through WMB, owned and/or serviced the mortgage on Youkelsone's two-family dwelling. (Am. Compl. ¶ 36.)

- WMI "operated its banking and related financial operation[s] exclusively through" WMB.  (Id. at ¶ 7.)

- In September 2001, the Federal National Mortgage Association ("FNMA") commenced a foreclosure action against Youkelsone's property, claiming that the mortgage had been assigned to it from WMI.  (Id. at ¶ 44.)

- At the time of the foreclosure action Youkelsone's equitable interest in the property, over $600,000, far exceeded the

---

[2]  As Youkelsone appears pro se, this Court interprets her pleadings liberally.  See, e.g., Alson v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (noting that pro se complaints in particular should be construed liberally).

value of the note, approximately $153,000. (<u>Id.</u> at ¶¶ 45-46.)

- WMI continuously rejected Youkelsone's requests to allow her to sell the premises through a private sale. (<u>Id.</u> at ¶ 65.)

- Youkelsone entered into a workout plan with WMI and on February 5, 2004, provided WMI with all the required documents and information. (<u>Id.</u> at ¶¶ 67-68.)

- WMI made no determination on Youkelsone's application to cure the default. Instead, WMI moved to foreclose on Youkelsone's property and scheduled a foreclosure sale on February 26, 2004. (<u>Id.</u> at ¶¶ 62-63.)

- Youkelsone subsequently obtained WMI's express permission to sell the property privately to a third party for less than fair market value. (<u>Id.</u> at ¶¶ 71-72.)

- On June 21 and 29, 2004, Youkelsone requested the payoff statement and closing papers. (<u>Id.</u> at ¶¶ 75 & 77.) On June 30, 2004, WMI sent a letter to Youkelsone demanding all sums due on the note. (<u>Id.</u> at ¶ 78.) Following WMI's demand letter, Youkelsone unsuccessfully requested the payoff statement at least five more times. (<u>Id.</u> at ¶ 79.)

- On October 22, 2004, WMI again moved to foreclose on the property, scheduling an auction for November 18, 2004. (<u>Id.</u> at ¶ 80.)

3

- On October 24, 2004, WMI provided Youkelsone with the payoff statement, which included finance charges, attorneys' fees, private mortgage insurance charges, late fees, and other charges. (<u>Id.</u> at ¶¶ 83-84.)

Based on these allegations, Youkelsone's Amended Complaint asserts the following nine causes of action against WMI: (1) abuse of process, (2) economic duress, (3) breach of contract, (4) unjust enrichment, (5) bad faith, (6) conduct in violation of section 1921(4) of the New York Real Property Actions and Proceedings Law (the "NYRPAPL"), (7) conduct in violation of section 1639 of the Truth in Lending Act ("TILA"), (8) deceptive practices, (9) misrepresentation, fraud, and deceit, and (10) intentional infliction of emotional harm.

On December 4, 2009, WMI filed a Motion to Dismiss the Amended Complaint. Youkelsone opposes the Motion. This matter has been fully briefed and is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B) & (O).

III.  <u>DISCUSSION</u>

WMI moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>See</u> Fed. R.

Bankr. P. 7012.  WMI contends that Youkelsone's claims are barred by the statute of limitations, that Youkelsone is estopped from litigating her claims by issue preclusion (collateral estoppel), and that Youkelsone has failed to state a claim upon which relief can be granted.

A.   Standard on a Rule 12(b)(6) Motion to Dismiss

In order for Youkelsone to survive a Rule 12(b)(6) motion, her claims must meet the standards of pleading.  The Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) have shifted federal pleading standards from notice pleading to a heightened standard of pleading.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  This heightened pleading requirement applies to all civil suits in federal courts.  Id.

To survive a motion to dismiss under the new pleading standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1940.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  "[A] pleading offering only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Fowler, 578 F.3d at 210.  "Courts have an obligation in matters before them to

5

view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000). A court must "draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Id.

In Fowler, the Third Circuit instructed courts to conduct a two-part analysis. Fowler, 578 F.3d at 210. "First the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." Id. at 210-11. Next, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id.

B. Affirmative Defenses under Rule 12(b)(6)

The statute of limitations and issue preclusion are affirmative defenses. Fed. R. Civ. P. 8(c). Typically,

6

affirmative defenses are raised in a defendant's answer.  Id.
However, any affirmative defense "apparent on the face of the
complaint" may be raised in a Rule 12(b)(6) motion.  Rycoline
Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)
(citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d
Cir. 1978)).

When an affirmative defense is raised in a motion under Rule
12(b)(6), the evaluation of the defense is not limited to the
four corners of the complaint.  See O'Boyle v. Braverman, 337 F.
App'x 162, 164 (3d Cir. 2009).  A court may also consider matters
of which judicial notice may be taken.  Id.  Therefore, "a court
may properly look at public records, including judicial
proceedings, in addition to the allegations in the complaint."
Id.  A court "may take judicial notice of another court's opinion
- not for the truth of the facts recited therein, but for the
existence of the opinion . . . ."  Id. at 164-65.

### 1.   Statute of Limitations

WMI argues that Youkelsone's claims are time-barred under
Delaware's statute of limitations and therefore should be
dismissed for failure to state a claim upon which relief can be
granted.  Youkelsone responds that the New York statute of
limitations should apply to her claims, but contends that her
claims are not time-barred even if Delaware law were to apply.
Youkelsone further argues that the statute of limitations should

be tolled regardless of what law applies because the underlying basis of her claims is fraud.

A choice of law determination should only be undertaken if there is an actual conflict between the relevant laws. <u>See, e.g.</u>, <u>Parlin v. Dyncorp Intern., Inc.</u>, No. 08c-01-136 FSS, 2009 WL 3636756, at *3 n.16 (Del. Super. Ct. Sept. 30, 2009) (stating that the court should avoid choice of law question where the laws of two jurisdictions would produce the same result on the particular issue presented). Therefore, it is necessary to determine whether the relevant Delaware and New York statutes conflict.

a.  <u>Delaware Statute of Limitations</u>

Delaware applies a general three-year statute of limitations. Del. Code Ann. tit. 10 § 8106. However, Youkelsone argues that her claims are subject to a six-year statute of limitations. Del. Code Ann. tit. 10 § 8109 (a six-year statute of limitations applies to a cause of action arising "from a promissory note, bill of exchange, or acknowledgment under the hand of the party of a subsisting demand.")

Youkelsone is correct that section 8109 applies to a cause of action arising from an obligation created by a mortgage note. <u>See, e.g.</u>, <u>F.D.I.C. v. Brossman</u>, No. Civ.A 81C-DE-116, 1984 WL 553542, at * (Del. Super. Ct., June 12, 1984) (applying six-year statute of limitations to action brought by mortgage assignee to

8

collect deficiency after foreclosure).  However, section 8109 does not apply to Youkelsone's causes of action because they are not based on obligations created by the mortgage note.  The mortgage note requires payment by Youkelsone, not payment to Youkelsone.  See, e.g., Security Storage Co. v. Equitable Sec. Trust Co., 147 A.2d 507, 510-11 (Del. Super. Ct. 1958) (stating that the six-year statute of limitations applies only "to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments; and the written instrument relied on must itself contain a contract to do the thing for the nonperformance of which the action is brought").  Section 8109 does not apply unless the mortgage note itself creates liability for Youkelsone's claims.  Youkelsone has not relied on any language in the mortgage note as the basis of her claims, and therefore, the Court concludes that her claims would not be subject to the six-year statute of limitations pursuant to section 8109.

Rather, the Court finds that under Delaware law Youkelsone's claims would be subject to the general three-year statute of limitations under section 8106.  See, e.g., Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc., No. Civ. 98-80-SLR, 2005 WL 46553, at *4 (D. Del. Jan. 5, 2005) (applying § 8106 to claims for unjust enrichment and fraud); Thor Merritt Square, LLC v. Bayview Malls LLC, 2010 WL 972776, at *3 n.6 (Del. Ch. Mar. 5,

2010) (applying § 8106 to breach of contract claims); Crowhorn v. Nationwide Mut. Ins. Co., No. Civ. A 00C-06-01WLW, 2002 WL 1767529, at *5 (Del. Super. Ct. Jul. 10, 2002) (applying § 8106 to claim for bad faith).

b.   New York Statute of Limitations

Youkelsone's claims for abuse of process and intentional infliction of emotional distress would be subject to a one-year statute of limitations.  N.Y.C.P.L.R. 215[3] (McKinney 2010). See, e.g., Dinerman v. City of New York Admin. for Children's Services, 857 N.Y.S.2d 221 (App. Div. 2008) (applying one-year limitations period of Rule 215[3] to claims for abuse of process and intentional infliction of emotional distress).  In addition, her claim under TILA is also subject to a one-year statute of limitations.  15 U.S.C. § 1640(e) (stating that action for violation of TILA section 1639 may be brought within one year from the date of the occurrence of the violation).

The remainder of Youkelsone's claims would be subject to New York's general six-year statute of limitations.  N.Y.C.P.L.R. 213 (McKinney 2010).  See, e.g., Key Bank of New York v. Del Norte Inc., 673 N.Y.S.2d 788, 789 (App. Div. 1998) (applying rule 213 to cause of action for violation of NYRPAPL); Benyo v. Sikorjak, 858 N.Y.S.2d 215, 217 (App. Div. 2008) (applying rule 213[7] to a claim for fraud); Second Presb. Church in City of New York v. Cenpark Realty LLC, 885 N.Y.S.2d 418 (App. Div. 2009) (applying

10

rule 213[2] to a breach of contract claim); <u>Sirico v. F.G.G.</u>
<u>Prods., Inc.</u>, 896 N.Y.S.2d 61, 66 (App. Div. 2010) (applying rule
213[1] to a claim for unjust enrichment).  Therefore, there is a
conflict between Delaware's and New York's limitations periods.

        c.   <u>Borrowing Statute</u>

WMI contends that Delaware's borrowing statute requires the
Court to apply Delaware's general three-year statute of
limitations.  The borrowing statute directs the Court to compare
Delaware's applicable limitations period with that of the state
in which the cause of action arose and to apply the shorter
period.  Del. Code Ann. tit. 10, § 8121 (2010).

The purpose of the borrowing statute is to prevent forum-
shopping.  <u>Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical</u>
<u>Co.</u>, 866 A.2d 1, 16 (Del. Super. Ct. 2005).  It prevents parties
from using Delaware as a forum in order to benefit from its more
favorable limitations period.  <u>Id.</u>  In the typical scenario, the
statute prohibits a plaintiff from bringing an out-of-state
claim, barred by the foreign state's statute of limitations, to
Delaware where the claim is not time-barred.  <u>Id.</u> at 16-17.
However, the statute will not be applied to permit a party to
take advantage of Delaware's shorter limitations period, as this
"would basically turn the borrowing statute on its head for the
purpose for which it was enacted."  <u>Id.</u> at 15.

WMI seeks to limit the reasoning of <u>Saudi Basic</u> to

situations in which plaintiffs choose a forum in order to prevent time-barred counterclaims.  The Court disagrees, as this narrow construction fails to consider the primary purpose of Delaware's borrowing statute.  The borrowing statute is meant to prevent either party in a suit from circumventing the statute of limitations of another jurisdiction by choosing Delaware as the forum state.

Similar rationales apply when debtors file for bankruptcy in Delaware.  See In re W.R. Grace & Co., 418 B.R. 511, 516-19 (D. Del. 2009).  A debtor's filing for bankruptcy in Delaware sets Delaware as the forum and requires that a creditor pursue all its claims here.  Id. at 518 n.4.  Allowing Delaware's borrowing statute to determine the applicable statute of limitations in such a scenario would "subvert the fundamental purpose of the statute and encourage forum-shopping by debtors seeking statute of limitations protection."  Id.

When WMI filed for bankruptcy in Delaware, it chose Delaware as the forum in which creditors must bring all of their claims. To allow WMI to use the benefit of Delaware's shorter limitations period would subvert the anti-forum-shopping purpose of the borrowing statute.  Therefore, the Court will not apply Delaware's borrowing statute.

> d.   Delaware's General Choice-of-Law Provision

When the borrowing statute is inapplicable, Delaware's

general choice-of-law rules determine which state's statute of
limitations applies where there is a conflict.  W.R. Grace, 418
B.R. at 518.  Delaware courts determine choice of law through
application of the "most significant relationship test set forth
in the Restatement (Second) of Conflicts of Laws."[3]  Shandler v.
DLJ Merchant Banking, Inc., No. 4797-VCS, 2010 WL 2929654, at *17
n.149 (Del. Ch. July 26, 2010).  To determine which state has the
most significant relationship, the court considers: the place
where the injury occurred, the place where the conduct causing
the injury occurred, the domicile, residence, nationality, place
of incorporation and place of business of the parties, and the
place where the relationship, if any, between the parties is
centered.  W.R. Grace, 418 B.R. at 519.  The importance of these
contacts are evaluated according to their relevance to the
particular issue.  Id.  The test requires the court to apply the
law of the state with the most significant contacts, not simply
the largest number of contacts.  Travelers Indem. Co. v. Lake,
594 A.2d 38, 48 (Del. 1991).

Youkelsone's Amended Complaint includes primarily tort and
contract claims.  All of the claims are generally related to the
mortgage contract on Youkelsone's New York residence.  New York
has substantial connections to the causes of action as all of

---

[3]  Restatement (Second) of Conflicts of Laws § 145(1)
(1971).

Youkelsone's alleged injuries occurred in New York, Youkelsone
was domiciled in, and a resident of, New York at the time the
injuries arose, and any relationship between WMI and Youkelsone
was centered in New York.  Washington is the only other
jurisdiction with any relevant contacts, as WMI was both
incorporated and headquartered there.  Because Washington was
WMI's main place of business, it was likely the place where some
of the conduct by WMI which allegedly caused Youkelsone's injury
occurred.  Delaware is the jurisdiction with the least important
contacts, as the only relevant contact is WMI's bankruptcy case.

        Viewing these contacts for their significance to the causes
of action, the Court concludes that New York has the most
significant relationship.  See, e.g., Cervantes v.
Bridgestone/Firestone North, Tire Co., LLC, No. 07C-06-249 JRJ,
2010 WL 431788, at *2 (Del. Super. Ct. Feb. 8, 2010).  Therefore,
the Court will apply New York's statute of limitations.

                    e.    Applying New York Statute of Limitations

        The effective date for the purposes of evaluating the
limitations period is September 26, 2008, the date of WMI's
chapter 11 filing.[4]  As noted above, Youkelsone's claims for

_____

        [4]  The commencement or continuation of any action against
WMI was stayed by WMI's chapter 11 filing pursuant to section 362
of the Bankruptcy Code.  11 U.S.C. § 362(a).  The time to file a
claim or action is tolled until 60 days after relief from the
automatic stay is granted.  Id. at § 108(b).  Similarly, New York
Law provides that "[w]here the commencement of an action has been
stayed by a court or by statutory prohibition, the duration of

abuse of process, intentional infliction of emotional distress, and violation of TILA are not included in the general statute of limitations, but are subject to a one-year statute of limitations.  Therefore, these causes of action must have accrued after September 27, 2007.  Because Youkelsone has not pleaded any factual allegations with respect to those claims arising after that date,[5] these claims are time-barred.

As discussed above, however, Youkelsone's claims for breach of contract, unjust enrichment, fraud, and violations of NYRPAPL do fall under the general six-year statute of limitations. Therefore, the critical date after which these causes of action must have accrued is September 26, 2002.  The Amended Complaint alleges conduct by WMI from 2003 to 2004 that relates to all of these causes of action.  (Am. Compl. ¶¶ 55-85.)  Therefore, the Court will not grant WMI's motion to dismiss those claims based on the statute of limitations.

2.  Issue Preclusion

WMI argues that Youkelsone is barred by issue preclusion from pursuing her remaining claims because a New York court has

---

the stay is not a part of the time within which the action must be commenced."  N.Y.C.P.L.R. 204(a) (McKinney 2010).

[5]  Although Youkelsone makes allegations relating to December 2008 and June 2009 (Am. Compl. ¶ 53) and states that the WMI maintains an action that "is still pending as of now in the State Court" (Am Compl. ¶ 92), these allegations relate to the Mortgage Action, which Youkelsone is barred by issue preclusion from alleging against WMI, as discussed below.

found that Youkelsone's mortgage was validly assigned by
Washington Mutual Home Loans, Inc. ("WMHL") to FNMA.  WMI argues
that the effect of the previous litigation is to bar Youkelsone
from stating any cause of action against WMI to the extent it
depends on WMI's ownership of Youkelsone's mortgage note.

On October 2, 2001, FNMA initiated an action in the New York
State Court to foreclose upon Youkelsone's residence (the
"Foreclosure Action").  <u>Federal Nat'l Mortgage Ass'n v.
Youkelsone</u>, 36834/01 (N.Y. Sup. Ct. 2001).  In response,
Youkelsone filed a motion to dismiss, alleging that the
assignment of her mortgage by WMHL to FNMA was invalid and that
FNMA lacked standing to sue.  <u>Id.</u>  The court denied the motion to
dismiss, finding that the assignment to FNMA was valid.  <u>Id.</u>  On
appeal, the order denying Youkelsone's motion to dismiss was
affirmed.  <u>FNMA v.  Youkelsone</u>, 303 A.D.2d 546 (N.Y. App. Div.
2003).

While the Foreclosure Action was pending, Youkelsone
initiated a separate lawsuit on December 24, 2001, in New York
State Court (the "State Court Action") against WMHL, Fleet
Mortgage Corporation, and Fleet Financial Group, Inc.  Youkelsone
again alleged wrongful conduct related to the foreclosure on her
home.  The defendants filed a motion to dismiss, which was
granted and affirmed, because to the extent Youkelsone's claims
were dependant upon issues asserted and decided in the

16

Foreclosure Action, she was collaterally estopped from raising
them again.  Youkelsone v. FNMA, 309 A.D.2d 655 (N.Y. App. Div.
2003).

Youkelsone argues that collateral estoppel is inapplicable
because the Amended Complaint alleges different issues and facts
from the previous Foreclosure and State Court Actions.  She
contends that the current claims relate to WMI's wrongdoing from
June 2003 to present, while the previous litigation reflected the
period of 1999 to 2001.  Youkelsone also argues that because
WMI's actions prevented her from litigating and pursuing her
remedies under the law, the previous state court decisions were
not made on the merits.

Under the principle of issue preclusion, a party may not re-
litigate an issue that was fully litigated in a previous action.
Board of Trustees of Trucking Employees of North Jersey Welfare
Fund, Inc., v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).  The
full faith and credit statute directs federal courts to refer to
the law of the state in which judgment was rendered in
determining whether issue preclusion applies.  28 U.S.C. § 1738.
See also Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S.
373, 380 (1985).  As both the Foreclosure Action and the State
Court Action occurred in New York, the Court applies the
preclusion law of New York, which bars claims "if (1) the
identical issue was raised in a previous proceeding; (2) the

17

issue was actually litigated and decided in that proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Congregation Adas Yereim v. City of New York, 673 F. Supp. 2d 94, 108 (E.D.N.Y. 2009) (citing Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005)). The "tribunals or causes of action" need not be the same, but the issue that was raised previously "must be decisive of the present action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002).

Youkelsone argues that collateral estoppel does not apply because the instant action alleges different issues and facts from the prior actions. Although the parties, facts, or causes of action may be different, a plaintiff is still barred from pursuing a claim where an essential element of the claim has already been determined. See, e.g., Quality Measurement Co. v. IPSOS S.A., 56 F. App'x 639, 645-46 (6th Cir. 2003); Singleton Management, Inc. v. Compere, 673 N.Y.S.2d 381, 383 (App. Div. 1998) (stating that where requirements of collateral estoppel are met, "there is no need, as there is with res judicata, that the cause of action sought to be barred be substantially identical to one decided in the prior action or that the party seeking to invoke the doctrine have had any connection to the prior

18

action.").

In the Foreclosure Action, Youkelsone attempted to contest the validity of the assignment of the mortgage, and the court held that the assignment was valid because it was in writing and signed by the agent of the assignor.  FNMA v. Youkelsone, 755 N.Y.S.2d at 730.  In the subsequent State Court Action, the court held that Youkelsone's claims were barred by collateral estoppel to the extent that they were dependent upon an alleged invalidity of the assignment of the mortgage.  Youkelsone v. FNMA, 765 N.Y.S.2d 792.  Therefore, although Youkelsone may allege a different set of facts against a different party, her claims may still be barred to the extent ownership of the mortgage is an essential element of the claims.

Youkelsone also alleges that the acts of WMI prevented her from fully litigating her claims and notes that her cause of action for abuse of process is evidence of this.  In her abuse of process cause of action in this Court, Youkelsone alleges that WMI "improperly influenced the courts by using deceptive means, false documents and false claims."  (Am. Compl. ¶ 99.)  She does not identify any of these documents or claims, however, nor does she explain how they prevented her from raising any factual or legal issues she may have asserted to contest the assignment of the mortgage.  The Court finds that Youkelsone had a full and

fair opportunity to litigate the validity of the assignment of
the mortgage note in the previous action.

Youkelsone argues that neither of the previous decisions
were issued on the merits but again presents no facts to support
that assertion.  A judgment is rendered on the merits if based on
an independent analysis of the claims.  See, e.g., Tang v. State
of R.I., Dept. of Elderly Affairs, 904 F. Supp. 69, 74 (D.R.I.
1995).  The finding of the court in the Foreclosure Action was
clearly on the merits.  Youkelsone previously argued in state
court that the fact that only token consideration for the
assignment was given indicates that the assignment was
fraudulent.  FNMA v. Youkelsone, 755 N.Y.S.2d at 730.  The court
determined after independent review that the assignment was valid
and that FNMA therefore had standing to sue on the mortgage note.
The "full and fair opportunity" prong of the collateral estoppel
doctrine is met if the party in the previous state court
proceeding was fully able to raise the same factual or legal
issues that are now asserted.  LaFleur v. Whitman, 300 F.3d at
274.

In this case, the principles of collateral estoppel are met.
Youkelsone has not identified any reason why the previous actions
should not be given preclusive effect.  See In re City of New
York, No. 14010/00, 2007 WL 509797, at *15 (N.Y. Sup. Ct. Feb.
15, 2007) (stating that collateral estoppel is based upon the

general notion that it is not fair to permit a party to
relitigate an issue that has already been decided against it and
considering whether relitigation should be permitted requires
analysis of "competing policy considerations, including fairness
to the parties, conservation of the resources of the court and
the litigants, and the societal interests in consistent and
accurate results").  Allowing Youkelsone to relitigate the
validity of the assignment of the mortgage would allow her to
contest an issue that has already been fully litigated, decided,
and affirmed on appeal.  Therefore, the Court concludes that
Youkelsone's claims are barred to the extent ownership of the
mortgage is an essential element of those claims.

     The Amended Complaint includes a number of allegations
relating to the commencement and pursuit of the Foreclosure
Action and alleges that WMI "was [the] ultimate party in interest
in the Foreclosure action."  (Am. Compl. ¶ 51.)  Under New York
law a plaintiff seeking to foreclose "must establish that it was
the owner or holder of the note and mortgage at the time that it
commenced the foreclosure action."  Financial Freedom SFC v.
Slinkosky, No. 11879/2009, 2010 WL 2802170, at *1 (N.Y. Sup. Ct.
June 24, 2010) (citing FNMA v. Youkelsone, 393 A.D.2d at 546).
Because Youkelsone is barred from contesting the ownership of the
mortgage note, the Court concludes that claims relating to the
Foreclosure Action are barred by issue preclusion because

ownership of the note is an essential element of those claims.

3.   Plausibility of Remaining Claims for Relief

Youkelsone's remaining claims for violation of NYRPAPL, unjust enrichment, and fraud must be evaluated under Rule 12(b)(6) to determine if they "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1940.

Youkelsone alleges two alternative bases for WMI's liability: (1) direct liability for various wrongs related to the servicing of her mortgage and (2) indirect liability for the actions of its banking subsidiary, WMB, in its servicing of her mortgage.

WMI argues that Youkelsone has failed to state a claim upon which relief can be granted.  WMI contends that Youkelsone has sued the wrong party because WMI never owned or serviced Youkelsone's mortgage.  Further, WMI argues that the Amended Complaint does not allege sufficient facts to justify disregarding the corporate form and finding WMI liable for WMB's alleged acts.

a.   Direct Liability

In order to assert a direct liability claim against WMI, Youkelsone alleges that WMI "formally acquired the Mortgage" and "was the actual owner of the subject mortgage and note."  (Am.

22

Comp. ¶ 37 & 39.)  Because as noted above Youkelsone is barred
from contesting the ownership of the mortgage, the direct
liability claim against WMI based on ownership of the mortgage is
not plausible.

Youkelsone also asserts causes of action relating to the
servicing of her mortgage.  Youkelsone alleges that "[a]t all
times [WMI] serviced the mortgage."  (Id. at ¶ 34.)  Mortgage
servicing is often assigned to third parties by the note holder,
making the third party responsible for collecting the borrower's
payments, maintaining all of the necessary accounts, and making
the necessary disbursements to the mortgage note holder.  Deerman
v. Federal Home Loan Mortg. Corp., 955 F. Supp. 1393, 1396 (N.D.
Ala. 1997).  The Amended Complaint alleges that WMI serviced her
mortgage, and "assessed various fees, excessive interest rate,
PMI charges on the loan account and inflated the amount due to
egregious extent."  (Am. Compl. ¶ 34.)  Youkelsone's allegations
relating to the servicing of her mortgage are included in her
causes for unjust enrichment, fraud, breach of contract, and
violation of NYRPAPL.

Whether Youkelsone can pursue any of these causes of action
depends on whether a mortgage servicer can be held liable to the
mortgagor.  Youkelsone has failed to allege any contractual
relationship existed between her and WMI as mortgage servicer.
Under New York law, unless the mortgage servicer is a party to

23

the mortgage contract, only the mortgagee can be held liable to the mortgagor. See, e.g., Fellows v. CitiMortgage, Inc., No. 07 Civ. 2261(DLC), 2010 WL 1857243, at *15 (S.D.N.Y. May 11, 2010). As the mortgage holder, only FNMA had a contractual relationship with the servicer and it is the only party with a right to enforce the servicer's obligations pursuant to the servicing contract. Id. Youkelsone was not a party to the servicing contract and has no standing to enforce it, even as a third party beneficiary. Id. at 16. Therefore, the Court concludes that Youkelsone does not have a plausible claim for breach of contract based on the improper servicing claims.

The Court concludes that the Amended Complaint does not state a plausible claim for relief that WMI is directly liable to Youkelsone for the misconduct related to the ownership or servicing of her mortgage.

b. Indirect Liability

The Amended Complaint also alleges that WMI can be held indirectly liable for the acts of its subsidiary bank, WMB. WMI argues that it cannot be held liable for any of the acts allegedly perpetrated by WMB because Youkelsone has failed to plead facts sufficient to disregard the separate corporate forms of WMI and WMB. WMI argues that Youkelsone's allegations are "mere conclusory statements parroting the elements required for piercing the corporate veil without providing any substance" and

24

asserts that Youkelsone's claims "are either meaningless, contrary to undisputed facts in the public record of which the Court can take judicial notice, contrary to the record of the case, or are simply bald and unsupported legal assertions."

Youkelsone responds that piercing the corporate veil is not necessary to hold WMI liable, that it is not a proper subject for resolution on a motion to dismiss, and that the Amended Complaint has pled facts sufficient to pierce the corporate veil and hold WMI liable under both alter ego and agency theories.

First, Youkelsone is incorrect in her assertion that piercing the corporate veil is unnecessary.  It is a basic tenet of American corporate law that "the corporation and its shareholders are distinct entities."  Dole Food Co. v. Patrickson, 538 U.S. 468, 474 (2003).  Therefore, a parent corporation will not be held liable for the actions "of its wholly owned subsidiaries absent evidence that would justify piercing the corporate veil."  Minton v. Ralston Purina Co., 47 P.3d 556, 557 (Wash. 2002).

Youkelsone is also mistaken in her contention that whether sufficient facts are pled to pierce the corporate veil is not a proper subject for resolution on a motion to dismiss, as courts routinely consider, and grant, motions to dismiss for failure to allege facts sufficient to support the imputation of liability on an alleged alter ego.  See, e.g., Spagnola v. Chubb Corp., 264

F.R.D. 76, 86 (S.D.N.Y. 2010) (citing cases from various
jurisdictions).

Delaware's choice-of-law rules require a court sitting in
Delaware to look to a company's state of incorporation to
determine the relationship between the corporate entity and its
shareholders.  Rosenmiller v. Bordes, 607 A.2d 465, 468 (Del. Ch.
1991).  Because both WMI and WMB are incorporated in the state of
Washington, the Court applies Washington law in deciding whether
WMI can be held liable for WMB's actions, based on the
allegations in the Amended Complaint.

Washington law generally recognizes parent corporations and
their subsidiaries as distinct legal entities; under either the
doctrine of corporate disregard or the alter ego theory, however,
a parent corporation may be held liable for the acts of its
subsidiary.  See, e.g., In re Wade Cook Fin. Corp., 375 B.R. 580,
598 (B.A.P. 9th Cir. 2007).

i.  Corporate Disregard

The doctrine of corporate disregard holds shareholders
liable for the corporation's acts when the corporation has been
intentionally used to violate or evade a duty owed to another.
See, e.g., Stockton v. Nenadic Invs., Ltd., No. 56282-7-I, 2006
Wash. App. LEXIS 2834 at *17-18 (Wash. Ct. App. Dec. 26, 2006).
Under Washington law, a plaintiff seeking to invoke the doctrine
of corporate disregard must show: (1) the corporate form was

26

intentionally used to violate or evade a duty and (2) disregard
of the corporate form is necessary to prevent unjustified loss to
the injured party. Campagnolo S.r.l. v. Full Speed Ahead, Inc.,
No. C08-1372 RSM, 2010 WL 2079694, at *6 (W.D. Wash. May 20,
2010) (citing Meisel v. M & N Modern Hydraulic Press Co., 645
P.2d 689, 692 (Wash. 1982)). The first element "requires an
abuse of the corporate form, which typically involves fraud,
misrepresentation, or some form of manipulation of the
corporation to the stockholder's benefit and creditor's
detriment." Id. The second element "requires that the wrongful
corporate activities cause the harm suffered by the party seeking
relief." Id. (citing Meisel, 645 P.2d at 692-93).

     In order to satisfy the first element, Youkelsone must
allege fraud related to the corporate form itself. Meisel, 645
P.2d at 692. Alleging that the corporate form is fraudulent
requires more than a close relationship. It is presumed that
corporations are structured in certain ways because they are
advantageous. Absent a showing of fraud, the business judgment
of the parties will not be questioned. See, e.g., Rena-Ware
Distributors, Inc. v. State, 463 P.2d 622, 625 (Wash. 1970)
(holding that the fact that the parent and subsidiary are joined
through ownership of stock, the same officers, employees, etc.,
does not justify disregarding the separate corporate identities
unless they are structured for the purpose of working a fraud

27

upon a third person); <u>J.I. Case Credit Corp. v. Stark</u>, 392 P.2d 215, 218 (Wash. 1964) (holding that piercing the corporate veil was inappropriate even where parent and wholly owned subsidiary shared officers who were paid by the parent, had common employees, the same address, the same lawyers, the same nonresident agent, and the same auditors, and where the subsidiary's sole business was performing services for the parent).

In the Amended Complaint, Youkelsone makes a number of allegations related to the corporate structure and the close relationship between WMI and WMB.  This includes allegations that the two filed consolidated tax returns (Am. Compl. ¶ 20), operated a centralized cash management system (<u>id.</u> at ¶ 21), conducted business from the same offices (<u>id.</u> at ¶ 13), shared identical directors and officers (<u>id.</u> at ¶ 14), shared the same president (<u>id.</u> at ¶ 15), and shared common employees (<u>id.</u> at ¶ 16).  Youkelsone does not allege, however, that any of these arrangements served a fraudulent purpose.  These allegations indicate nothing more than a close relationship between a parent and a subsidiary and are not sufficient to sustain a claim under the doctrine of corporate disregard.  <u>Minton</u>, 47 P.3d at 563; <u>J.I. Case</u>, 392 P.2d at 218.

Youkelsone does allege various fraudulent acts relating to WMB's servicing of her mortgage.  The Amended Complaint alleges

28

that WMB engaged in a "vast scheme of fraud and extortion by [assessing] . . . outrageous fees and penalties on the account; misapply[ing] and reject[ing]" payments, and failing "to provide closing documents within [a] reasonable period of time." (Am. Compl. ¶ 35.)  Youkelsone also alleges that WMB "engaged in [a] continuous scheme with intent to deprive the plaintiff of her property by unjustifiably rejecting and/or misapplying the plaintiff's payments towards the mortgage."  (Id. at ¶ 58.) Despite the allegations of fraudulent conduct on behalf of WMB, the claims do not relate to a fraudulent misuse of the corporate form, as "a mere assertion of fraud on the part of a subsidiary does not constitute an abuse of the corporate form."  In re Washington Mutual, Inc., 418 B.R. 107, 115 (Bankr. D. Del. 2009) (citing Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 530 (D. Del. 2008)).  Youkelsone's claim of fraudulent conduct by WMB does not allege abuse of the corporate form, and therefore, the Court finds it insufficient to state a claim for relief against WMI under the doctrine of corporate disregard.

ii.  Alter Ego

In a parent-subsidiary relationship, the general principle that the parent corporation is not liable for the acts of its subsidiaries is ignored only in exceptional cases.  Campagnolo S.r.l., 2010 WL 2079694, at *2 (quoting U.S. v. Bestfoods, 524 U.S. 51, 61 (1998)).  Under the alter ego theory, a parent

29

corporation will be found liable for acts of its subsidiary only if piercing the corporate veil is necessary to prevent fraud or injustice to third parties and the parent "so dominates and controls [the subsidiary] as to make [it] merely an adjunct to [the parent]." Superior Portland Cement, Inc. v. Pac. Coast Cement Co., 205 P.2d 597, 620 (Wash. 1049).

> [T]here must be such a commingling of the affairs of
> two corporations as to work an injustice on third
> parties if their separate status is recognized . . . .
> Their property rights must be so commingled and their
> affairs so intimately related in management as to
> render it apparent that they are, in fact and in
> intent, one, and so related, to have them regarded
> otherwise would work a fraud upon third persons.

Wade Cook, 375 B.R. at 599.

The Amended Complaint makes numerous claims related to WMI's control and domination of WMB. Many of these claims, however, are merely conclusory allegations of law, unreasonable inferences or deductions of fact, or threadbare recitals of the elements of alter ego. Therefore, they need not be accepted as true by the Court. These include allegations that WMI "controlled, supervised, directed, and completely dominated all of the Bank's financial operations, Bank's policies and business practices in respect to all transactions generated by the Bank" (Am. Compl. ¶ 12), "completely directed, managed and controlled" the business affairs of the Bank (id. at ¶ 18), "directed, supervised and controlled all decision making, treasury, cash management, finance, governance, regulatory and executive functions of the

30

Bank" (id. at ¶ 25), had common divisions, subdivisions, and departments as WMB (id. at ¶ 17), "operated the Bank the same as if it were one of the division of the Defendant rather than a wholly owned subsidiary" (id. at ¶ 26), had its "business affairs, assets and liabilities . . . so connected, commingled and intertwined [with WMB] that no separation of the corporate entity is possible" (id. at ¶ 28), controlled and directed Bank's transactions for its own benefit (id. at ¶ 29), and "used its subsidiary Bank as mere instrumentality, completely dominated and controlled all financial operations, policies, and business practices to the extent that the Defendant is the ultimate party in interest and should be regarded in law and in fact as a sole party liable for its subsidiary Bank's acts, omissions and wrongdoings" (id. at ¶ 30).

These claims offer mere conclusions that WMI controlled WMB but offer no factual allegations which would lead to a plausible inference that WMI directed WMB to engage in misconduct specifically related to the servicing of Youkelsone's mortgage. The Court need not accept as true any conclusory statements or legal conclusions in the Complaint. Iqbal, 129 S.Ct. at 1949-50. Therefore, these statements are not accepted as true in assessing whether Youkelsone states a claim of alter ego.

The Amended Complaint also includes allegations which are not plausible in light of the public record. See, e.g., Sprewell

31

v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)
(holding that the court need not accept as true anything in the
complaint which contradicts facts of which the court may take
judicial notice); O'Boyle, 337 F. App'x at 164 (holding that
courts may take judicial notice of public records).

For example, the allegation that WMI "maintained no separate
legal formalities such as filing necessary papers, reports and
corporate tax reports" (Am. Compl. ¶ 27) is contrary to the
public record.  WMI was a public company whose securities traded
on the New York Stock Exchange and was subject to strict
regulation, including the informational disclosure requirements
of the Securities Exchange Act of 1934.  The public record
discloses that WMI filed annual, quarterly, and current reports
and other information with the SEC under its own name.
Similarly, WMB was a national bank subject to extensive
regulation by the OTS, FDIC and other agencies.  Also, the August
31, 1999 Tax Sharing Agreement is evidence that WMI and WMB did
adhere to legal formalities required by the IRS with respect to
corporate taxes.  See 26 U.S.C. § 1501 ("An affiliated group of
corporations shall . . . have the privilege of making a
consolidated return . . . for the taxable year in lieu of
separate returns.").

Consistent with the analysis required under Rule 12(b)(6),
the Court does accept as true the factual allegations that WMI

32

and WMB had the same offices (Am. Compl. ¶ 13), shared directors and officers (id. at ¶ 14), shared common employees (id. at ¶ 16), conducted all business affairs, and issued all correspondence "under combined name most commonly known as 'WaMu'" (id. at ¶¶ 22 & 24), filed consolidated tax returns (id. at ¶ 20) and "operated a centralized cash management system" (id. at ¶ 21).

While Youkelsone's allegations may allege a close relationship, they are not sufficient to impose alter ego liability.  That a parent and subsidiary corporation "are intimately related in carrying on their business for the purpose of mutual benefit is not enough to characterize a corporation as the alter ego of another corporation." Wade Cook, 375 B.R. at 599.  Even common officers, directors and employees is acceptable because "it is a well established principle of corporate law that directors and officers holding positions with a parent and subsidiary can and do 'change hats' to represent two corporations separately." Wyatt v. Ford Motor Co., No. C04-5666 RBL, 2006 WL 1663676, at *4 (W.D. Wash. June 13, 2006) (quoting Bestfoods, 524 U.S. at 69).  Furthermore, a common trade name is frequently used in parent-subsidiary relationships and is not a basis for disregarding the corporate form.  See, e.g., Bagel Bros. Maple, Inc. v. Ohio Farmers, Inc., 279 B.R. 55, 67 (W.D.N.Y. 2002). Youkelsone has failed to plead any factual allegations that WMI

used the corporate form for fraudulent or improper purposes and
has failed to offer any factual allegations leading to the
plausible inference that WMI controlled and directed WMB in its
misconduct related to servicing her mortgage.  Therefore, the
Court concludes that Youkelsone has failed to state a cause of
action under the alter ego theory.

### iii. Agency

Youkelsone asserts nonetheless that the Amended Complaint
sufficiently pleads facts to hold WMI liable on an agency theory,
because it asserts that WMI operated and managed WMB through the
same board of directors, from the same office, and with the same
employees.

Under Washington law, the elements of agency are mutual
consent and control by the principal of the agent.  Uni-Com
Northwest, Ltd. v. Argus Pub. Co., 47 Wash. App. 787, 796-797
(1987).  The crucial factor is control.  It is not established if
the asserted principal merely retains the right to supervise
performance; it must control the manner of performance.  Id.
While courts have expressed doubt as to whether a separate agency
theory exists to hold a parent corporation liable, it is clear
that a higher degree of control is necessary to find agency in
parent-subsidiary relationships.  See Campagnolo S.r.l., 2010 WL
2079694, at *7 (stating that the court doubts whether alter ego
and agency theories for parent liability are in fact separate and

noting that to hold shareholder liable for corporation's wrongs
through agency principles would seem to be a disguised way of
finding corporate disregard).  Imposing liability on a parent
through agency "requires that the parent exercise total control
over the subsidiary, well beyond the normal control exercised."
Id.  "A parent has no liability on an agency theory where it does
not 'direct . . . and authorize . . . the manner in which the
subsidiary conduct[s] its business.'"  Id.  Whether the parent
and subsidiary respected corporate formalities is relevant to the
question of whether the parent so dominated the subsidiary that
the subsidiary is a mere agent of the parent.  Id.

The Court concludes that Youkelsone has failed to allege the
complete control necessary to hold WMI liable for WMB's acts
under Washington agency law.  The allegations accepted as true by
the Court in the Amended Complaint establish that a lawful
parent-subsidiary relationship existed but fail to establish that
WMI exercised complete control by directing and managing the
manner in which WMB conducted business.  Furthermore, the close
regulation and adherence to corporate formalities discussed above
negates the type of domination necessary to find WMB a mere agent
of WMI.

Youkelsone argues that this Court has already found WMI to
be liable for a contract entered into by WMB in another action
because "WMB had at least implied authority to act as WMI's agent

35

and to bind it to the Agreement." In re Washington Mutual, Inc.,
421 B.R. 143, 150 (Bankr. D. Del. 2009). That holding, however,
was based on "traditional principles of agency" rather than
merely the corporate relationship alleged by Youkelsone. In the
prior action, this Court found that an agency relationship
existed based on a contract entered into by WMB, which "was
structured so that WMB was acting as WMI's agent." Id. at 150.
In this case, Youkelsone did not allege sufficient facts to
establish that WMB was acting as WMI's agent in servicing her
mortgage; WMI was not in the business of mortgage servicing.
"Where a subsidiary is engaged in a completely different line of
business, it cannot be said that the business of the parent is
carried out by the subsidiary." Gallelli v. Crown Imports, LLC,
2010 WL 1177449, at *7 (E.D.N.Y. March 20, 2010) (holding that
subsidiary corporations were not agents of parent holding company
under New York law for tort action against subsidiary "where
business of subsidiaries was beer brewing and distribution, and
business of holding company was investment.") Therefore, the
Court concludes that Youkelsone has failed to state a cause of
action against WMI based on agency.


IV.  CONCLUSION

    For the reasons set forth above, the Court will grant the
Defendant's Motion to Dismiss.

36

An appropriate order is attached.

Dated: August 13, 2010                 BY THE COURT:

                                        _____
                                        Mary F. Walrath
                                        United States Bankruptcy Judge